**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IRIS YOLANDA BAEZ TORRES, | ) | CASE NO. 1:24-CV-00496-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant, | ) | **AND ORDER** |
| | ) | |

**I. Introduction**

Plaintiff, Iris Yolanda Baez Torres, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's final decision denying Baez Torres DIB and SSI.

**II. Procedural History**

On August 3, 2020,[1] Baez Torres filed applications for DIB and SSI, alleging a disability onset date of July 4, 2019. (ECF No. 7, PageID #: 459–70). The applications were denied initially and upon reconsideration, and Baez Torres requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 235–36, 238–39, 242). On September 20, 2022, an ALJ held a

---

[1] There is some confusion in the record regarding the date Baez Torres applied for SSI. One record reflects the date of SSI application as September 21, 2020. (ECF No. 7, PageID #: 464). The date of SSI application is not an issue herein.

1

hearing, during which Baez Torres, with the assistance of a Spanish-speaking interpreter and represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 50, 74). On April 4, 2023, the ALJ issued a written decision finding Baez Torres was not disabled. (ECF No. 7, PageID #: 50–64). The ALJ's decision became final on January 18, 2024 when the Appeals Council declined further review. (ECF No. 7, PageID #: 28–30).

On March 18, 2024, Baez Torres filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Baez Torres asserts the following assignment of error:

> The ALJ's RFC finding is not supported by substantial evidence because her evaluation of Nurse Gilbert's *Off-Task/Absenteeism Questionnaire* did not comply with the revised regulations for evaluating medical opinion evidence.

(ECF No. 10 at 10).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Baez Torres's hearing:

> The claimant has alleged that she is disabled due to her impairments (testimony; B3E). At the hearing, the claimant testified that she has pain in her hand and pain in her should[er] that prevent her from working (testimony). She estimated that she could carry a gallon of milk, but it would be difficult (*Id.*). She also stated that she has limitations in standing and walking to [sic] due to pain (*Id.*). Additionally, she explained that she has pain in her neck that radiates to her upper extremities (*Id.*). She explained that she has numbness in her hands and in her feet (*Id.*). She estimated that she could be on her feet for only one to two minutes (*Id.*). She stated that wit[h] regard to her hand she has no improvement after surgery (*Id.*). She stated that she has difficulty reaching in most directions (*Id.*). She also endorsed ongoing issues with her knees (*Id.*). The claimant also stated her treatment has been helpful but the pain returns (*Id.*). She also stated she has both good and pain days with regard to her pain (*Id.*). With regard to her mental symptoms, she endorsed crying spells but stated that her medications are helpful (*Id.*)

(ECF No. 7, PageID #: 57).

More specifically, Baez Torres testified only that her mental health medication "sometimes" helped her calm down. (ECF No. 7 PageID #: 119). Additionally, Baez Torres testified that she experienced anxiety of the type that would make her cry every day, that she did not grocery shop alone as the noise from the people in the store made her anxious, that she had problems being in public alone, and that she socialized only with immediate family and, while in church, with members of her church. (ECF No. 7 PageID #: 122–24).

The vocational expert, Rebecca Kendrick, testified that "[i]f an individual is off task even 15% or more of the work day excluding regular breaks and lunches it is work preclusive." (ECF No. 7 PageID #: 132). She further explained that "[i]f an individual would be absent, arrive late, or leave early two times or greater per month on a regular or ongoing basis they would likely be met with reprimand and/or termination so it would be work preclusive." (ECF No. 7 PageID #: 132).

### B. Relevant Medical Evidence

The ALJ also summarized Baez Torres's health records and symptoms:

> In August 2019 the claimant was found to be depressed and anxious; however, she denied feeling depressed or anxious and the treatment notes also stated she was hopeful (B4F/11, 12). At a follow up appointment, the claimant reported some improvement in her sleep but still reported some symptoms such as dysphoric mood, hallucinations, and paranoid thoughts (B5F/14). She was found to be anxious and dysphoric on examination (B5F/15). The treatment notes again noted she was improving but was not at goal (B5F/15). In October 2019 the claimant reported that she was sleeping better with her medications and her mood was stable and she denied feeling depressed or overly anxious (B5F/17). She further explained she would occasionally have some mood instability, but it was not overwhelming or problematic at that time (*Id.*). Her mood at this appointment was euthymic (B5F/18). At the next appointment in January 2020 the claimant reported she had gone to Puerto Rico for

the holiday and had experienced earthquakes while there which had cause[d] her some increased depression and anxiety (B5F/20). Her mood at this appointment was described as depressed, anxious, and irritable (B5F/21). The claimant's medications were adjusted (B5F/21). In February 2020 the claimant reported improvement in her symptoms with the medication changes (B5F/23). Her mood at this appointment was euthymic (*Id.*). In April 2020 the claimant acknowledged some anxiety about the pandemic, but the treatment notes stated that she remained pleasant, cooperative, and hopeful (B5F/26). Her mood was described as anxious and dysphoric (B5F/27). Her medications were again adjusted (*Id.*). At another appointment in April 2020 the claimant reported that her mood was improving but she still was somewhat dysphoric (B5F/29). She stated that she was having some anxiety, but it was not overwhelming (B5F/29). Her mood was anxious and dysphoric at this appointment (B5F/30). In June 2020 the claimant endorsed improvement in her depression but did endorse some periods of agitation and anxiety related to the pandemic (B5F/32). She was described as irritable at this appointment (B5F/33). In July 2020 the claimant reported that her depression and anxiety had increased somewhat due to the pain after recovering from surgery (B5F/35). She was described as anxious, dysphoric, and irritable (B5F/36). In September 2020 the claimant again reported improvement in her mood but stated she had some anxiety and irritability still (B10F/79). At another follow up in October 2020 the claimant reported some feelings of depression, agitation, and anxiety which was consistent with her mood at this appointment and her medications were adjusted (B13F/6, 7). At a subsequent appointment in November 2020 the claimant reported some improvement in her mood but still having some anxiety and irritability (B13F/9). In December 2020 the claimant was having some mood fluctuations and anxiety (B15F/14). Treatment notes in December 2020 also stated the claimant appeared to be utilizing coping skills and her support system and that she was hopeful (B15F/30).

In February 2021, the claimant reported some depression, anxiety, and irritability but also stated she had some situational stress related to her brother that contributed to her symptoms (B15F/17). In May 2021 the treatment notes stated that the claimant was having some occasional anxiety, but she was utilizing skills well to cope with it (B23F/8). In June 2021 the claimant reported some fluctuations in her mood with depression, agitation, and anxiety (B23F/5). Her medications were adjusted (B23F/6). Subsequently the claimant reported improvement in her mood with some ongoing anxiety (B23F/22). In December 2021 the claimant continued to report some

4

> depression and anxiety, but the treatment notes stated the claimant was hopeful and motivated (B27F/3). In January 2022 the claimant reported that she was still having feelings of depression, agitation, and anxiety (B27F/18). However, in February 2022 the claimant reported she was feeling happy (B27F/32). At a follow up appointment in April 2022 the claimant stated her mood had improved and denied feeling depressed or overly agitated or anxious (B27F/49). Again, in June 2022 the claimant reported an improved mood and denied feeling depressed or overly agitated or anxious (B27F/68). In August 2022 the claimant stated she was having some feelings of sadness but overall felt she was coping effectively (B29F/7).

(ECF No. 7, PageID #: 59–61).[2]

### C. Opinion Evidence at Issue

On July 9, 2021, Kimberly Gilbert, MSN, APRN, Baez Torres's nurse practitioner, completed an Off-Task/Absenteeism Questionnaire assessing whether Baez Torres would likely be off task during an eight-hour workday on a sustained basis based on her impairments. (ECF No. 7, PageID #: 2149). Ms. Gilbert indicated that based on her treatment of Baez Torres, she believed Baez Torres would likely be off task at least 20 percent of the workday, exclusive of a half-hour lunch break and two fifteen-minute breaks. (ECF No. 7, PageID #: 2149). Ms. Gilbert explained that Baez Torres is likely to be off task due to her mental impairments consisting of mood instability—including depression, agitation, and mood fluctuations; psychosis—including auditory and visual hallucinations and paranoia; and anxiety. (ECF No. 7, PageID #: 2149). She further explained that Baez Torres is additionally likely to be off task because of her inability to concentrate, pay attention, or focus on a sustained basis due to her tendency to be easily distracted, her poor memory, and her poor focus. (ECF No. 7, PageID #: 2149). Gilbert also indicated that

---

[2] Because Baez Torres does not challenge the ALJ's findings related to her physical limitations, only her mental limitations, the above medical evidence details only Baez Torres's pertinent mental-health history.

she anticipated that these impairments would cause Baez Torres to be absent from work about four times per month. (ECF No. 7, PageID #: 2149). The ALJ did not find this opinion persuasive. (ECF No. 7, PageID #: 61). Baez Torres challenges the ALJ's evaluation of this opinion.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift 20 pounds occasionally and 10 pounds frequently and carry 20 pounds occasionally and 10 pounds frequently. The claimant is capable of sitting for 6 hours in an 8-hour workday however she must have the option to alternate to standing for three minutes after every 30 minutes of sitting. This is optional. She would not be away from the workstation and would not be off task. She is capable of standing and/or walking for 6 hours in an 8-hour workday however she must have the option to alternate to sitting for five minutes, after every 30 minutes of standing/walking. This is optional. She would not be away from the workstation and would not be off task. The claimant is capable of pushing and pulling as much as can [sic] she can lift/carry. She can operate foot controls with her right foot frequently. She can operate foot controls with left foot frequently. She can operate hand controls with her right hand frequently. She can operate hand controls with left hand frequently. She is able to frequently reach overhead to the left, and frequently reach overhead to the right. For all other reaching she can reach frequently to the left and can reach frequently to the right. She can handle items frequently with the left hand and can handle items frequently with the right hand. She can frequently finger with the left hand, and frequently finger with the right hand. The claimant can frequently feel with the left hand and can frequently feel with the right hand. The claimant can climb ramps and stairs occasionally. She can never climb ladders, ropes, or scaffolds. She can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, but never with moving mechanical parts, and can work in vibration occasionally. The claimant can understand, remember and carryout instructions. She is able to perform simple, routine, and repetitive tasks. She can use Judgment. She is able to perform simple, work-related decisions. She is able to interact with supervisors frequently. She is able to

>   interact with coworkers frequently. She is able to interact with the public.
>
>   6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(ECF No. 7, PageID #: 56, 62).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

B. **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

C. **Discussion**

Baez Torres raises one issue on appeal. She argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to properly evaluate Nurse Practitioner Gilbert's Off-Task/Absenteeism Questionnaire according to the appropriate regulations for evaluating medical opinion evidence. At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after

8

March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

Nurse Practitioner Gilbert treated Baez Torres for several years (*See, e.g.*, ECF No. 7, PageID #: 1104, 2517), and on July 9, 2021, she completed an Off-Task/Absenteeism Questionnaire evaluating the likelihood that Baez Torres would be off task or absent from the workplace based on her mental (or physical) impairments. (ECF No. 7, PageID #: 2149). On this questionnaire, Ms. Gilbert indicated that based on her treatment and knowledge of Baez Torres and her impairments, she believed Baez Torres would likely be off task at least 20 percent of the workday, exclusive of a half-hour lunch break and two fifteen-minute breaks. (ECF No. 7, PageID #: 2149). Gilbert explained that Baez Torres is likely to be off task due to her mental impairments consisting of mood instability—including depression, agitation, and mood fluctuations;

9

psychosis—including auditory and visual hallucinations and paranoia; and anxiety. (ECF No. 7, PageID #: 2149). She also explained that Baez Torres is likely to be off task because of her inability to concentrate, pay attention, or focus on a sustained basis due to her distractibility, poor memory, and poor focus. (ECF No. 7, PageID #: 2149). Ms. Gilbert also indicated that she expected that these impairments would cause Baez Torres to miss work about four times monthly. (ECF No. 7, PageID #: 2149).

The ALJ found Ms. Gilbert's opinion unpersuasive, reasoning:

> In July 2021 the claimant's treating source, Kimberly Gilbert, MSN, APRN completed a medical statement questionnaire form (B20F). Ms. Gilbert stated that the claimant has marked limitation in understanding, remembering, and applying information, in interacting with others, and in maintaining concentration, persistence, and pace and a marked limitations in adapting or managing himself (Id.). She also indication [sic] that the claimant had a serious and persistent disorder with evidence of both medical treatment and marginal adjustment (Id.). She also stated that that the claimant would be off [task] at least 20% of the time (Id.). This opinion is not persuasive as it is not supported by the claimant's medical records. For example, with regard to interacting with others; the claimant has endorsed paranoid thoughts and irritability both of which would affect her ability to interact with others (B5F/11, 14, 20, 21, 33 for example). However, she was routinely described as pleasant and cooperative (B5F/11, 14, 24, 26, 29 for example). Additionally, she reported that she was looking forward to socializing in person once the pandemic ends (B15F/28). Additionally, the record documented improvement with treatment; for example, in August 2022 the claimant stated she was having some feelings of sadness but overall felt she was coping effectively (B29F/7).

(ECF No. 7, PageID #: 61–62).

Baez Torres argues that in evaluating Ms. Gilbert's opinion, the ALJ failed to adequately explain how she considered the supportability and consistency factors as required under 20 CFR §404.1520c. Specifically, in regards to supportability, Baez Torres asserts that the ALJ failed to address "the content of Nurse Gilbert's *Off-Task/Absenteeism Questionnaire* other than saying she

10

opined Plaintiff would be off-task at least 20% of the time" and that it was unclear how or if the ALJ considered the supportability factor. (ECF No. 10 at 12–13). The Commissioner replies that the ALJ did address the bases Ms. Gilbert provided in support of her opinion because earlier in her decision, the ALJ "acknowledged Ms. Gilbert's treatment notes documenting [Baez Torres]'s reports, at times, of mood instability, anxiety, and psychosis, including paranoid thoughts affecting her ability to maintain attention and concentration" and also "discussed additional evidence from Ms. Gilbert that was not consistent with her opinion that [Baez Torres] would be off-task at least 20% of the time," including mental status examinations ("MSEs") that showed she had fair or normal fund knowledge, had fair or good memory, had good attention and concentration, had fair or good insight or judgment, was well groomed, and that Baez Torres reported cooking, cleaning, and planning to study for her bachelor's degree. (ECF No. 12 at 15–16). The Commissioner argues that the ALJ is not required to repeat this analysis again when analyzing the persuasiveness of Ms. Gilbert's opinion. (ECF No. 12 at 16). The Commissioner also argues that Ms. Gilbert's opinion is a check-box opinion and thus is unsupported and asserts that the check-box nature itself is a reason to discount the medical opinion, even if the ALJ's decision did not call attention to the check-box nature of Ms. Gilbert's opinion. (ECF No. 12 at 16–17).

The Court agrees with the Commissioner. The ALJ adequately considered the supportability of Ms. Gilbert's opinion. As an initial matter, the ALJ states that she finds the opinion "not persuasive as it is not supported by the claimant's medical records." (ECF No. 7, PageID #: 61). The ALJ then provided two examples to demonstrate that the opinion was not supported by the medical records. While the ALJ did not fully address the content of Ms. Gilbert's opinion regarding Baez Torres abilities to concentrate, pay attention, or focus on a sustained basis due to her distractibility, poor memory, and poor focus, the ALJ properly addressed this medical

11

evidence earlier in her analysis. And, as the Commissioner suggests, if earlier in her opinion, an ALJ discusses the medical evidence underlying the medical opinion, she need not repeat that analysis again when analyzing the persuasiveness of the medical opinion. *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (finding that the ALJ's evaluating a medical opinion by summarizing and referencing earlier discussion of the pertinent medical records was acceptable). Throughout her decision, the ALJ discusses findings from MSEs, including those from Ms. Gilbert's own appointments with Baez Torres, that do not support Ms. Gilbert's opinion that Baez Torres would be off task at least 20 percent of the time and absent about four days per month due to mood instability, psychosis, and anxiety, or due to being easily distracted, possessing a poor memory, or having poor focus. For example, at step three, the ALJ cited to several MSEs completed by Ms. Gilbert showing that Baez Torres was routinely found to have good or fair memory and that despite Baez Torres's endorsing symptoms of insomnia and paranoia, which presumably would affect her concentration, Ms. Gilbert routinely found her to be alert or have good concentration and found that Baez Torres had only "moderate" limitations in concentrating, persisting, or maintaining pace. (ECF No. 7, PageID #: 55). The ALJ additionally explained that Baez Torres's MSEs showed that despite Baez Torres's endorsing crying spells and hallucinations, which may make it difficult for her to manage her emotions, Ms. Gilbert found her to have fair or good insight and judgment. (ECF No. 7, PageID #: 55).

As discussed more below, in supporting her RFC finding, the ALJ additionally considered findings from Baez Torres's MSEs that indicate that Baez Torres's symptoms improved with medications and were not as severe or persistent at Baez Torres alleged. For example, the ALJ cited to MSEs that were completed by Nurse Practitioner Gilbert while she was treating Baez Torres in which she noted that Baez Torres denied feeling depressed (ECF No. 7, PageID #: 1103,

1109, 2490, 2509), felt hopeful (ECF No. 7, PageID #: 1103, 1118), and reported improvement in symptoms (ECF No. 7, PageID #: 1106, 1107, 1109, 1115, 1121, 1124, 1771, 1902, 2272, 2490, 2509). Thus, through her review of Baez Torres's MSEs that were completed by Ms. Gilbert, the ALJ adequately considered the supportability of Ms. Gilbert's opinion. There is substantial evidence to support the ALJ's conclusion that Ms. Gilbert's Off-Task/Absenteeism Questionnaire opinion was unsupported, and, thus, the Court finds no error with this conclusion.

While the Commissioner additionally argues that Nurse Practitioner Gilbert's Off-Task/Absenteeism Questionnaire opinion is a check-box opinion, that the check-box nature of the opinion itself is a reason to discount the opinion, and finally that the check-box nature renders the opinion unsupported, the Court need not address this argument as it finds that the ALJ adequately considered the supportability of the opinion.

In regard to the ALJ's required consistency analysis, Baez Torres asserts that the ALJ cites cooperativeness and alleviation of symptoms with medication as evidence of inconsistency between Ms. Gilbert's opinion and the record, but she argues that Ms. Gilbert does not list Baez Torres's inability to cooperate nor her symptoms' complete resistance to medication as bases for her opinion that she would be off task 20 percent of the time. (ECF No. 10 at 13–14). Thus, Baez Torres argues, the ALJ failed to point to any actual inconsistency between Ms. Gilbert's opinion and the underlying record. (ECF No. 10 at 14). Baez Torres additionally argues that the record contains evidence that she experienced symptom instability and that Ms. Gilbert frequently had to start, stop, or adjust the dosage of her medications due to their lack of efficacy. (ECF No. 10 at 15). She asserts that it is unclear how frequent medication adjustment and symptom instability supports the ALJ's decision to discredit Ms. Gilbert's opinion. (ECF No. 10 at 15). Baez Torres further argues that the ALJ's "finding that she experienced improvement with medications without

discussing the frequency of her medication changes" mischaracterizes the evidence, and, finally, that "the underlying record is consistent with Nurse Gilbert's statement that Plaintiff continued to struggle with mood instability despite therapy and medication compliance." (ECF No. 10 at 15–16).

The Commissioner argues that the ALJ addressed the consistency of Ms. Gilbert's opinion when she mentioned that the record documented improvement in Baez Torres's symptoms, and in particular, cites times in 2022 when Baez Torres told a therapist, Licensed Social Worker Ms. Welchel, that she was having feelings of sadness but felt she was coping effectively and that she was "looking forward to socializing in person after the pandemic ended." (ECF No. 12 at 17). The Commissioner also cites to the portion of the ALJ's opinion where she summarized over three-years' worth of mental health evidence and included citations to MSEs that document Baez Torres's claiming improvement in symptoms. (ECF No. 12 at 17). The Commissioner further asserts that Baez Torres failed to show the ALJ's decision is not supported by substantial evidence and instead invites the Court to reweigh the evidence. (ECF No. 12 at 18).

The Court agrees with the Commissioner and finds that the ALJ adequately considered the consistency of Ms. Gilbert's opinion with the record evidence. Where, as here, the medical opinion comes from the claimant's treating medical provider, and most of the evidence in the record consists of that treating provider's medical records, the ALJ's supportability and consistency analyses may overlap. *See Guthrie v. Comm'r of Soc. Sec.,* No. 3:22-CV-1309, 2023 WL 6258259, at *3 (N.D. Ohio Sept. 26, 2023) ("Whether a medical source's opinion is supported by the record may necessarily overlap with whether a medical source's opinion is consistent with the record, as the opinion's support will typically come from other evidence in the record."). As discussed above, the ALJ found that Ms. Gilbert's opinion was not supported by Baez Torres's medical records, and

the record documented improvement with treatment. (ECF No. 7, PageID #: 61–62). While discussing her RFC finding, the ALJ summarized Baez Torres's mental-health history, considering findings from treatment notes completed by Nurse Practitioner Gilbert and other healthcare providers, including Ms. Welchel. For example, during this discussion, the ALJ cites to several instances in the record where: the provider finds Baez Torres's symptoms had improved or Baez Torres claims improvement in symptoms (ECF No. 7, PageID #: 1106, 1107, 1109, 1115, 1121, 1124, 1771, 1902, 2272, 2490, 2509); Baez Torres denies feeling depressed (ECF No. 7, PageID #: 1103, 1109, 2490, 2509); and Baez Torres claims she feels hopeful or happy (ECF No. 7, PageID #: 1103, 1118, 1997, 2473). In considering these improvements, the ALJ simultaneously considered record evidence showing that Baez Torres continued to experience symptoms of mood instability, psychosis, and anxiety. (ECF No. 7, PageID #: 59–61). She concluded, despite Baez Torres's continuing symptoms, that Baez Torres's mental health impairments were not as severe as alleged and that the record showed improvement with treatment. (ECF No. 7, PageID #: 59, 62). The several records from both Ms. Gilbert and Ms. Welchel that indicate improvements in mood instability, psychosis, and anxiety symptoms serve as substantial evidence to support the ALJ's finding that the record documents improvement with treatment and that Ms. Gilbert's opinion that Baez Torres would be off task 20 percent of the time and absent four days per month due to these symptoms is inconsistent with the record.

  Baez Torres points to evidence in the record that Nurse Practitioner Gilbert had to frequently start, stop, or adjust her medications and that her symptoms persisted despite these changes. (ECF No. 10 at 15–16). She argues that there is no inconsistency between Ms. Gilbert's opinion—that she would be off task due to mood instability, psychosis, and anxiety symptoms— and the record, and in fact that the record is consistent with the bases that Nurse Practitioner Gilbert

15

gave for her opinion. (ECF No. 10 at 16). But "a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene ex rel. Green v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Further, even if there were substantial evidence in the record that might also support Baez Torres's position that the record did not show sufficient improvement to make Ms. Gilbert's opinion inconsistent with the record, "it is not this Court's function to conduct a *de novo* review of the medical evidence and simply arrive at a different conclusion than the ALJ. Where there is sufficient evidence to support an ALJ's opinion, this Court must affirm." *Id.* Here, the ALJ adequately considered the consistency of Ms. Gilbert's Off-Task/Absenteeism Questionnaire opinion and explained how the opinion and its bases were inconsistent with the record. This conclusion was supported by substantial evidence. Thus, the Court finds no reason to disturb this decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Baez Torres DIB and SSI.

IT IS SO ORDERED.

Dated: October 18, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE